**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSE PEREZ, | Civil Action No. 10-655  (SDW) |
| Petitioner, | |
| v. | **OPINION** |
| LARRY GLOVER, et al., | |
| Respondents. | February 14, 2012 |

**APPEARANCES:**

JOSE PEREZ, Petitioner pro se
#554257/SBI 808570B
Northern State Prison
168 Frontage Road, P.O. Box 2300
Newark, New Jersey 07013

LUCILLE M. ROSANO, ESQ.
ESSEX COUNTY PROSECUTOR'S OFFICE
Essex County Veterans Courthouse
50 West Market Street
Newark, New Jersey 07102
Counsel for Respondents

**WIGENTON**, District Judge

This matter is before the court pursuant to a petition for a writ of habeas corpus under 28

U.S.C. § 2254, filed by petitioner Jose Perez, challenging his 2006 New Jersey state court

conviction.  For the reasons stated below, this Court will deny the habeas petition for lack of

merit.

## I. PROCEDURAL BACKGROUND

Petitioner, Jose Perez ("Perez"), was indicted by a Essex County grand jury, Indictment

No. 2005-7-1699, on the following charges: (Count 1) first degree robbery in violation of

N.J.S.A. 2C:15-1; (Count 2) third degree unlawful possession of a weapon (handgun) in

violation of N.J.S.A. 2C:39-5b; and (Count 3) second degree possession of a weapon for an

unlawful purpose in violation of N.J.S.A. 2C:39-4a. (RE-A, Indictment).[1]  A  hearing was held

on March 7, 2006, and the out-of-court and in-court identification was ruled admissible.  (1T

P47:L6-10).[3]

Trial commenced on March 8, 2006, before a jury with the Honorable Martin G. Cronin,

J.S.C., presiding.  On March 15, 2006, the jury acquitted Perez on Count 1 of first degree

---

[1]  "RE" refers to the Respondents' Exhibits containing the relevant state court record.

[2]  United States v. Wade, 388 U.S. 218 (1967).

[3]  Transcripts of the state court proceedings are listed as follows:

|       |                |                      |
|-------|----------------|----------------------|
| 1T -  | March 7, 2006  | Wade Hearing         |
| 2T -  | March 8, 2006  | Trial transcript     |
| 3T -  | March 9, 2006  | Trial transcript     |
| 4T -  | March 14, 2006 | Trial transcript     |
| 5T -  | March 15, 2006 | Trial transcript     |
| 6T -  | May 4, 2006    | Motion transcript    |
| 7T -  | June 5, 2006   | Sentencing transcript|

robbery and the lesser included offense of second degree robbery, but convicted Perez on Counts 2 and 3 of the indictment.  (5T 14:2-16).

Before sentencing, Perez filed a motion for a directed verdict of acquittal, which was denied.  The State also moved for an extended term.  Perez was sentenced on Count 3 to a mandatory extended 18-year prison term with five years parole ineligibility under the Graves Act, N.J.S.A. 2C:44-3d, and to a concurrent five-year prison term on Count 2.

Perez filed a direct appeal from his conviction and sentence to the Superior Court of New Jersey Appellate Division.  On December 23, 2008, the Appellate Division affirmed the conviction and sentence, except for the period of parole ineligibility, which was remanded to correct the judgment of conviction to reflect a six-year period of parole ineligibility pursuant to N.J.S.A. 2C:43-7c.  (RE-D).   An amended judgment of conviction was entered on January 12, 2009.  (RE-C).  The New Jersey Supreme Court denied certification on March 23, 2009.  State v. Jose Perez, 198 N.J. 474 (2009).

It does not appear that Perez filed a petition for a writ of certiorari before the Supreme Court of the United States.  It also does not appear that Perez has filed any state court petition for post-conviction relief.

Perez timely filed this federal habeas petition under 28 U.S.C. § 2254 on or about January 15, 2010.  The State filed an answer with the relevant record on February 23, 2011.  (Docket entry no. 13).  Perez filed a reply or traverse on or about March 7, 2011.  (Docket entry no. 16).

## II.  FACTUAL BACKGROUND

The facts of this case were recounted at the lower level and this Court, affording the state court's factual determinations the appropriate deference, see 28 U.S.C. § 2254(e)(1), will simply

reproduce the factual recitation as set forth in the unpublished opinion of the Superior Court of

New Jersey, Appellate Division, decided on December 23, 2008, with respect to petitioner's

direct appeal from his judgment of conviction and sentence:

> The following facts are summarized from the record.  On December 23, 2004, at approximately 10:45 a.m., Kyung Kim and her husband, Kynom Kim, were working in their jewelry store on Halsey Street, Newark.  An Hispanic male in a black hat and black jacket, later identified as defendant, entered the store, removed a gun from his pocket, pointed it at Kynom and said, "hold up, give me the money."  Defendant moved toward Kynom and old [sic] him to "move back."
>
> Kyung, who was on the telephone at the time defendant entered the store, held the phone up over her head and waved to attract the attention of a person in a store across the street.  Defendant grabbed the phone from Kyung and threw it to the floor.  Kyung continued waving her empty hand at the person across the street, at which point defendant covered her mouth with his hand and hit her in the head.  With the gun still in his hand, defendant grabbed Kyung around the neck and pulled her to the floor.  Kyung was shaking and said she felt like she was "dying."
>
> Min  was in the bathroom in the store across the street.  As she came out of the bathroom, her brother, who saw Kyung waving her hands, told Min to call the police. Instead of calling the police, Min ran o [sic] Kyung's store.  When Min entered the store, she saw Kyung on the floor with defendant standing over her and she saw Kynom standing by the stock room door.  Defendant had a goatee, clear, light skin and was dressed in a dark jacket and scully hat.
>
> As Min called out to Kyung, defendant walked slowly toward her with gun pointed.  Min believed that she "was going to die," and "was very scared."  She looked to the ground and "moved to the side thinking that [defendant] would just leave."  Defendant stood in place for a few seconds and then left the store.  Min saw defendant go left upon exiting the store and "[she] just ran outside and ... screamed out that [defendant] had a gun." Min then re-entered the store to check on Kyung.
>
> Detective Darren Gilbert and Ronald Glover of the Newark Police Department were on routine patrol in plain clothes and [sic] an unmarked police vehicle in the vicinity of Halsey Street.  As they turned on to Halsey Street they saw defendant running out of a store and another individual behind him.  Gilbert heard people yelling and saw defendant with what appeared to be a handgun in his right hand.

---

4   Min Kim is not related to Kyung Kim.

Gilbert exited his patrol car and chased defendant while Glover drove around the block to cut off defendant's escape from the opposite direction. Gilbert chased defendant onto Bank Street, where he and Glover converged on defendant with weapons drawn. Gilbert identified himself as a police officer and ordered defendant to stop and drop to his knees. According to Gilbert, defendant did not obey and "walked a couple of feet and threw the gun under a car that was parked on the ... right-hand side of the street." The gun was a 9-mm semi-automatic Makarov pistol. The detectives were then "able to subdue [defendant] without any further complications."

About two hours later, Glover interviewed Kyung and Min at police headquarters. After Kyung and Min said they could positively identify the perpetrator if they saw him again, Glover showed them a photograph of defendant taken at the time of his arrest. Kyung and Min positively identified the person in the photograph as the perpetrator.

Officer Gary Robinson of the Newark Police Department dusted the door of the store and fumed the handgun recovered from under the parked car for fingerprints. One print found on the front door o [sic] he [sic] store did not match any known fingerprints and the handgun had no prints on it.

Prior to the start of the trial, Judge Cronin held a <u>Wade</u> hearing on the admissibility of the out-of-court identification and entertained a motion to preclude admission of defendant's prior convictions. Glover testified that he interviewed Kyung and Min and showed them photographs of only one person. <u>The Attorney General Guidelines For Preparing and Conducting Photo And Live Lineup and Identification Procedures</u> (April 18, 2001)(the Guidelines) require the showing of six photographs. Judge Cronin concluded that, despite procedural irregularities, Kyung's and Min's out-of-court photographic identifications were admissible based upon the totality of the circumstances. The judge also concluded that because defendant's three prior convictions were not so remote as to be unduly prejudicial, they were admissible , in sanitized form, for the purposes of impeachment should defendant decide to testify.

During the trial, Judge Cronin held a <u>Rule</u> 104 hearing to determine whether the State had impermissibly and prejudicially violated discovery rules as to the fingerprint evidence, which was not disclosed to defense counsel until the middle of the trial. Concluding that violations occurred, the judge barred the prosecutor from asking Robinson about that evidence. The judge also concluded, however, that if defendant inquired about this evidence during cross-examination, the prosecutor could address it on redirect examination. On cross-examination, defense counsel asked Robinson if he had dusted for fingerprints in any part of the store.

At trial, Kyung, Min, Gilbert, Glover, Robinson, and Frank Faretra of the Newark Police Department's ballistics unit testified on behalf of the State. Kyung's and Min's out-of-court photographic identifications were admitted into evidence. In court, Kyung was unable to positively identify defendant as the robber. She testified, "[i]t could be that

man [the defendant] or not, I'm not sure."  However, Min, Glover and Gilbert positively identified defendant in court.

At the close of the State's case, defendant requested a judgment of acquittal on all counts, contending that "the State failed to prove an adequate nexus between [him] and the crime to warrant a conviction."  Judge Cronin denied the motion, finding that there was sufficient eyewitness evidence from which the jury could conclude that defendant was guilty of the charges beyond a reasonable doubt.  Thereafter, defendant did not testify or present any witnesses or evidence.

After his conviction, defendant filed a motion for a directed verdict of acquittal based on an alleged inconsistent verdict.  Judge Cronin denied the motion.  The judge also denied the State's motion to sentence defendant as a persistent offender under N.J.S.A. 2C:44-3d, finding that defendant did not meet he [sic] criteria in the statute.  However, the judge found defendant eligible for a mandatory extended term sentence under the Graves Act, N.J.S.A. 2C:44-3 because defendant had a prior armed robbery conviction.  The judge also found aggravating factors N.J.S.A. 2C:44-1(3) (the risk that defendant will commit another offense), N.J.S.A. 2C:44-1(6)(the extent of defendant's prior criminal record and the seriousness of the offense of which he was convicted) and N.J.S.A. 2C:44-1(9)(the need for deterring defendant and others from violating the law).  The judge found no mitigating factors.

(RE-D, December 23, 2008 Appellate Division Opinion, at pp. 4-9).

## III.  CLAIMS PRESENTED

Perez asserts the following claims for habeas relief:

(A) The Petitioner's conviction on Count 3 is unconstitutional under the Due Process Clause of

the Fourteenth Amendment since this conviction is inconsistent with the acquittals for first and

second degree robbery and insufficient evidence exists to sustain this conviction;

(B) The Petitioner was deprived of his Fourteenth Amendment due process rights as the trial

judge erred in denying the motion for a judgment of acquittal in favor of the Petitioner as to all

of the counts as the State failed to establish Petitioner's guilt beyond a reasonable doubt;

(C) The Petitioner's conviction is violative of his right to a fair trial under the Due Process Clause of the Fourteenth Amendment since the trial judge erred in refusing to charge the jury as to cross-racial identification;

(D) The trial court should have excluded the in-court identifications by the witnesses as that identification was tainted by an unduly suggestive out-of-court identification procedure in which Detective Glover: 1) utilized only a single photograph of the Petitioner; 2) was the same detective who conducted the investigation; and 3) never advised the witnesses that the photograph may not be the actual suspect all in , contravention of the Attorney General's Guidelines for eyewitness identification procedures in violation of the Petitioner's due process right to a fair trial;

(E) The trial court erred in admitting all three prior convictions of the Petitioner for impeachment purposes in violation of Petitioner's Fourteenth Amendment due process right to a fair trial;

(F) The Petitioner's state discovery and Fourteenth Amendment due process rights were violated by the State mandating issuance of the writ;

(G) The Petitioner's extended sentence must be vacated as he was ineligible for an extended term under the Graves Act (N.J.S.A. 2C:44-3d); the sentence is violative of the Petitioner's Eighth Amendment and Fourteenth Amendment due process rights;

(H) The Petitioner's extended sentence is violative of Petitioner's due process and Sixth Amendment jury trial rights under Apprendi, Blakely and Booker.

The State argues that Petitioners claims should be denied for lack of merit and/or because they fail to raise issues of a federal constitutional deprivation.

It is plain from the state court record that all of the claims raised by Perez have been exhausted on direct appeal.

### IV.  STANDARD OF REVIEW

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).  Thus, because Perez is proceeding as a pro se litigant in this matter,[5] the Court will accord his habeas petition the liberal construction intended for pro se petitioners.

Section 2254(a) of Title 28 of the United States Code gives the court jurisdiction to entertain a habeas petition challenging a state conviction or sentence only where the inmate's custody violates federal law.  28 U.S.C. § 2254(a).

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); 28 U.S.C. § 2254(a); accord Barry v. Bergen County Probation Dep't, 128 F.3d 152, 159 (3d Cir. 1997).  "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension."  Smith v.

---

[5]  Perez's habeas petition was prepared by retained counsel who had sought appointment as pro bono counsel in this matter.  This Court denied the requested appointment of counsel in an Opinion and Order entered on October 6, 2010.  (Docket entry nos. 4 and 5).  Petitioner has been proceeding pro se since October 2010.

8

Phillips, 455 U.S. 209, 221 (1982).  Generally, "[i]f a state prisoner alleges no deprivation of a federal right, § 2254 is simply inapplicable," Engle v. Isaac, 456 U.S. 107, 120 n. 19 (1982), and "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." Bradshaw v. Richey, 546 U.S. 74, 76 (2005).

In reviewing a § 2254 petition, a federal court is not permitted to address a federal constitutional claim pertinent to the facts of the case unless the petitioner asserts the claim as a ground for relief.  That is, "errors of state law cannot be repackaged as federal errors simply by citing the Due Process Clause." Johnson v. Rosemeyer, 117 F.3d 104, 110 (3d Cir. 1997). In addition, "it is well established that a state court's misapplication of its own law does not generally raise a constitutional claim." Smith v. Horn, 120 F.3d 400, 414 (3d Cir. 1997)(citations and internal quotation marks omitted); see also Smith v. Zimmerman, 768 F.2d 69, 71, 73 (3d Cir. 1985).

In addition to the case law, the Antiterrorism and Effective Death Penalty Act ("AEDPA") limits a federal court's authority to grant habeas relief when a state court has adjudicated petitioner's federal claim on the merits.  See 28 U.S.C. § 2254(d).  Where a federal claim was "adjudicated on the merits" in state court proceedings, the writ must be denied unless adjudication of the claim either involved an unreasonable application of clearly established federal law, or was based on unreasonable determination of the facts in light of the evidence before the state court.  See 28 U.S.C. § 2254(d).

The unreasonableness standards of § 2254(d) govern only claims that were "adjudicated on the merits in State Court proceedings." 28 U.S.C. § 2254(d).  "An 'adjudication on the

merits' has a well settled meaning: a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground."  Rompilla v. Horn, 355 F.3d 233, 247 (3d Cir. 2004)(citations and internal quotation marks omitted), reversed on other grounds sub nom.  Rompilla v. Beard, 545 U.S. 374 (2005); see also Rolan v. Vaughn, 445 F.3d 671, 678 (3d Cir. 2006).  A state court may render an adjudication on the merits of a federal claim by rejecting the claim without any discussion whatsoever.  See Rompilla, 355 F.3d at 247.  See also Chadwick v. Janecka, 312 F.3d 597, 605-06 (3d Cir. 2002), cert. denied, 538 U.S. 1000 (2003)(citing Weeks v. Angelone, 528 U.S. 225, 237 (2000)(even a summary adjudication by the state court on the merits of a claim is entitled to § 2254(d) deference)).  On the other hand, "[i]f the petitioner's legal claims were presented but not addressed by the state courts, 28 U.S.C. § 2254(d) does not apply."  Rolan, 445 F.3d at 678.  See also Hameen v. State of Delaware, 212 F.3d 226, 248 (3d Cir. 2000)(with respect to claims presented to, but unadjudicated by, the state courts, however, a federal court may exercise pre-AEDPA independent judgment), cert. denied, 532 U.S. 924 (2001); Purnell v. Hendricks, No. 99-1651, 2000 WL 1523144, *6 n.4 (D.N.J. 2000).

If the New Jersey courts adjudicated the petitioner's claims on the merits, this Court may not grant relief unless either § 2254(d)(1) or § 2254(d)(2) is satisfied.  See 28 U.S.C. § 2254(d).  Accordingly, this Court may not grant habeas relief to the petitioner unless the adjudication of a federal claim by the New Jersey courts involved an unreasonable application of clearly established Supreme Court law, see 28 U.S.C. § 2254(d)(1), or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding and

10

Perez is in custody in violation of the Constitution or laws or treaties of the United States.  See 28 U.S.C. § 2254(a), (d)(2).

When the grounds raised in the petition are governed by 28 U.S.C. § 2254(d)(1), the court must begin its analysis by determining the relevant law clearly established by the Supreme Court.  See Yarborough v. Alvarado, 541 U.S. 652, 660 (2004). Clearly established law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision."  Williams v. Taylor, 529 U.S. 362, 412 (2000).  A court must look for "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision."  Lockyer v. Andrade, 538 U.S. 63, 71, 72 (2003).

A decision is "contrary to" a Supreme Court holding within 28 U .S.C. § 2254(d)(1), if the state court "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result."  Williams, 529 U.S. at 405-06.  Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Id. at 413. Whether a state court's application of federal law is "unreasonable" must be judged objectively; an application may be incorrect, but still not unreasonable.[6]  See id. at 409-10. "The unreasonable application test is an objective one-a federal court may not grant habeas relief

---

[6]  See also Marshall v. Hendricks, 307 F.3d 36, 71 n. 24 (3d Cir. 2002)("[D]ecisions of federal courts below the level of the United States Supreme Court may be helpful to [a court] in ascertaining the reasonableness of state courts' application of clearly established United States Supreme Court precedent, as well as helpful amplifications of that precedent.")(citations and internal quotation marks omitted).

merely because it concludes that the state court applied federal law erroneously or incorrectly." Thomas v. Varner, 428 F.3d 491, 497 (3d Cir. 2005) (quoting Jacobs v. Horn, 395 F.3d 92, 100 (3d Cir. 2005)).

Finally, federal courts are required to apply a "presumption of correctness to factual determinations made by the state court." Id.; see also 28 U.S.C. § 2254(e)(1). The Third Circuit has ruled that this presumption of correctness based upon state court factual findings can only be overcome by clear and convincing evidence. See Duncan, 256 F.3d at 196 (citing 28 U.S.C. § 2254(e)(1)). Consequently, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001).

## V. ANALYSIS

### A.  Inconsistent Verdict Claim

Perez first contends that his conviction on Count 3 is unconstitutional under the Fourteenth Amendment's Due Process Clause because his conviction for possession of a weapon for an unlawful purpose is inconsistent with the acquittals for the first count offense of first degree robbery and the lesser included offense of second degree robbery. Petitioner also argues that there was insufficient evidence to sustain the conviction. Perez previously raised this claim on direct appeal.

The Appellate Division rejected Perez's claim. Relying on both federal and state case law, the Appellate Division held:

> "Consistency in the verdict is not necessary. Each count in the indictment is regarded as if it was a separate indictment." [State v.] Banko,[] 182 N.J. [44] at 53 (2004) (quoting Dunn v. United States, 284 U.S. 390, 393 [](1932)). See also State v. Muhammad, 182 N.J. 551, 558 (2005). "Inconsistent verdicts are permitted as long as there is sufficient evidence to permit a rational factfinder to find a defendant's guilt

12

beyond a reasonable doubt on the charges on which the defendant was convicted." <u>State v. Ellis</u>, 299 N.J. Super. 440, 455-56 (App. Div.), <u>certif</u>. <u>denied</u>, 151 N.J. 74 (1997). "Review of the sufficiency of the evidence on the guilty verdict is independent of the jury's determination that the evidence on another count was insufficient." <u>State v. Petties</u>, 139 N.J. 310, 319 (1995) (citing <u>United States v. Powell</u>, 469 U.S. 57, 67 [] (1984)).

It is true that, "if the possession charge stands alone, or if acquittal of the accompanying charge erases the identification of the unlawful purpose, the court may not permit the jury to convict on the basis of speculation as to what possible purposes qualify as unlawful." [<u>State v.</u>] <u>Jenkins</u>, [] 234 N.J. Super. 311, 315 [(App. Div. 1989)]. We reversed the defendant's conviction in <u>Jenkins</u> because the trial judge improperly charged the jury as to possession of a weapon for an unlawful purpose without first specifying the unlawful purpose. <u>Id</u>. at 316. We are satisfied that he jury charge [sic] given here was proper.

(RE-D, December 23, 2008 Appellate Division Opinion at pp. 12-13).

In particular, Perez had argued that the trial judge's charge to the jury on the fourth element of a possession of a weapon for an unlawful purpose offense prohibited a finding of an unlawful purpose for anything other than the robbery, for which Perez was ultimately acquitted. The Appellate Division first looked at the essential elements for a conviction of second degree possession of a weapon for an unlawful purpose under <u>N.J.S.A.</u> 2C:39-4a, observing that a jury must find beyond a reasonable doubt that: "(1) the object possessed was a firearm within the meaning of <u>N.J.S.A.</u> 2C:39-1f; (2) defendant possessed it; (3) the purpose of the possession was to use the firearm against another's property or person; and (4) defendant intended to use it in a manner that was unlawful." (RE-D, December 23, 2008 Appellate Division Opinion at pg. 10, citing <u>Banko</u>, 182 N.J. at 57). The appellate court then looked at the language of the jury charge cited by Perez regarding the fourth element of the offense, in which the trial judge charged the jury as follows:

The element requires that you find the State has proven beyond a reasonable doubt that the defendant possessed he [sic] firearm with the conscious objective, design or specific intent to use it against the person or property of another in an unlawful manner as charged in the indictment and not for some other purpose.

13

> In this case, the State contends that the defendant's unlawful purpose in possessing the firearm was to commit the robbery alleged in Count One.
>
> You must not rely upon your own emotions ... of the unlawfulness of some other undescribed purpose of the defendant, rather you must consider whether the State has proven the specific unlawful purpose charge.

However, the Appellate Division found that defendant's claim ignored the trial judge's language in his further instruction to the jury on this charge as follows:

> The unlawful purpose alleged by the State may be inferred from all that was said or done and from all the surrounding circumstances of this case.
>
> However, the State need not prove that the defendant accomplished this purpose of using the firearm in this case.
>
> If you are satisfied beyond a reasonable doubt that the State has proven each of the elements of this offense as I have defined them to you, then you must find the defendant guilty.
>
> However, if you find that the State has failed to prove beyond a reasonable doubt any of the elements of this offense as I have defined them to you, then you must find the defendant not guilty.

(RE-D, December 23, 2008 Appellate Division Opinion at pp. 10-12).

In reviewing the trial record and the jury charge as a whole, the Appellate Division found "ample evidence supporting the charge of possession of a weapon for an unlawful purpose." Specifically, the court found that "[t]he handgun defendant used was in evidence and witnesses testified that he possessed and used that handgun in attempting to rob the jewelry store.  Thus, the jury appropriately found that defendant used the gun against another's property or person and he intended to use it in a manner that was unlawful.  That defendant never actually stole anything and was acquitted on the robbery charge, is, therefore, irrelevant."  (RE-D, December 23, 2008 Appellate Division Opinion at pg. 13).  In reaching this conclusion, the appellate court relied on

14

a New Jersey Supreme Court ruling, which held that, "absent an erroneous jury charge, where there was sufficient evidence to support the charge for which the defendant was convicted, an acquittal on a substantive charge is not fatal to a conviction for possession of a weapon for an unlawful purpose."  (Id., citing State v. Banko, 182 N.J. 44, 56 (2004)).

Generally, inconsistent verdict claims are not cognizable on federal habeas review in the absence of conviction of two offenses that are mutually exclusive.  United States v. Powell, 469 U.S. 57, 69 n.8 (1984); Buehl v. Vaughn, 166 F.3d 163, 178-79 (3d Cir.), cert. dismissed, 527 U.S. 1050 (1999); Laird v. Horn, 159 F. Supp.2d 58 (E.D.Pa. 2001), aff'd and remanded, 414 F.3d 419 (3d Cir. 2005), cert. denied, 546 U.S. 1146 (2006).  The Supreme Court has long held that "[c]onsistency in the verdict is not necessary." Dunn v. United States, 284 U.S. 390, 393 (1932); Powell, 469 U.S. at 62.  So long as there is sufficient evidence to sustain the conviction for the charge of which the petitioner has been found guilty, a reviewing court will not disturb the conviction.  Id.

The Third Circuit likewise ruled that "[w]here different offenses are charged in separate counts of a single indictment, an acquittal on one or more of the counts does not invalidate a verdict of guilty on another even where the same evidence is offered in support of each count." United States v. Vastine, 363 F.2d 853, 854 (3d Cir. 1966)(citing Dunn, 284 U.S. at 390).  Dunn explains that "the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt.  We interpret the acquittal as no more than their assumption of a power which they had no right to exercise, but to which they were disposed through lenity."  Dunn, 284 U.S. at 393. See also Powell, 469 U.S. at 65("[i]nconsistent verdicts - even verdicts that acquit on a

15

predicate offense while convicting on the compound offense - should not necessarily be interpreted as a windfall to the Government at the defendant's expense. It is equally possible that the jury, convinced of guilt, properly reached its conclusion on the compound offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense").

Moreover, a claim that the jury's verdict was against the weight of the evidence, as alleged here by Petitioner, may raise a due process concern, only where, "after viewing the evidence in the light most favorable to the prosecution, [no] rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). This standard must be applied "with explicit reference to the elements of the criminal offense as defined by state law." Jackson, 443 U.S. at 324, n. 16. See also Orban v. Vaughn, 123 F.3d 727 (3d Cir. 1997), cert. denied, 522 U.S. 1059 (1998). As noted above, state court factual determinations are presumed to be correct. See West v. Vaughn, 228 F.3d 178, 186 (3d Cir. 2000), cert. denied, 532 U.S. 980 (2001).

As discussed above, the New Jersey Appellate Division concluded that the verdict on the possession of a weapon for an unlawful purpose offense was "amply" supported by the evidence. Therefore, the verdicts were not necessarily inconsistent, and was based on sufficient evidence. In light of the state court's factual determination that there was "ample" evidence to support the charge, as set forth above, and given the established federal law regarding inconsistent verdicts, this Court finds no constitutional basis to disturb the state court conviction. Perez has not shown a deprivation of a constitutional right, an unreasonable application of federal law by the state court, or an unreasonable determination of the facts in light of the evidence presented in the state

16

court proceeding, as required to grant habeas relief pursuant to 28 U.S.C. § 2254(d).

Accordingly, the petition for a writ of habeas corpus will be denied on this ground.

B. <u>Motion for Judgment of Acquittal</u>

Perez's second claim for habeas relief asserts that the trial court erred in denying his motion for a judgment of acquittal as to all counts, in violation of his Fourteenth Amendment right to due process, where the State failed to establish Perez's guilt beyond a reasonable doubt. This claim also was raised on direct appeal. In this petition, and on direct appeal, Perez argues that Kyung's inability to identify him at trial and the alleged improper out-of-court identification procedures warranted acquittal on all charges.

The Appellate Division rejected this claim, finding sufficient evidence at trial to support the conviction on the second and third counts beyond a reasonable doubt. The court recited the test to be applied in reviewing such a motion for a judgment of acquittal as "determining the sufficiency of the proof [by] view[ing the evidence] in its entirety and giving the State the benefit of all of its favorable testimony and all of the favorable inferences which can reasonably be drawn therefrom [] such that a jury could properly find beyond a reasonable doubt that the defendant was guilty of the crime charged." (RE-D at p. 14, quoting <u>State v. Moffa</u>, 42 N.J. 258, 263 (1964)(internal citations omitted); <u>N.J.Ct.R.</u> 3:18-1).

The appellate court found that, despite Kyung's inability to identify Perez at trial, "Min, Glover, and Gilbert positively identified defendant at trial as the perpetrator. Gilbert chased defendant from the time he saw defendant exit the jewelry store to the time he and Glover converged upon defendant on Bank Street. Both Gilbert and Glover saw defendant with the handgun in his hand, and they saw him throw the gun under a car. Thus, we are satisfied there

17

was ample evidence upon which, giving every reasonable inference to the State, a jury could convict defendant of the possessory charges."  (RE-D, pp. 14-15).

Perez's habeas claim regarding the motion for acquittal is premised on the argument that there was insufficient evidence to support the guilty verdict.  His petition discusses the testimony and evidence presented, and he suggests that little weight should have been accorded to the eyewitness testimony of Kyung and Min because the "entire incident lasted less than one minute."  As discussed above, a sufficiency of the evidence claim is governed by Jackson v. Virginia, supra.  "[I]n a challenge to a state criminal conviction brought under 28 U.S.C. § 2254—if the settled procedural prerequisites for such a claim have otherwise been satisfied—the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt."  Id., 443 U.S. at 324; accord McDaniel v. Brown, 130 S.Ct. 665, 666, 175 L.Ed.2d 582 (2010)(per curiam).  When assessing a sufficiency of the evidence claim in a § 2254 petition, the sufficiency of the evidence standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law."  Jackson, 443 U.S. at 324 n. 16.  Jackson "requires a reviewing court to review the evidence in the light most favorable to the prosecution. Expressed more fully, this means a reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'"  McDaniel, 130 S.Ct. at 673 (quoting Jackson, 443 U.S. at 326); see also House v. Bell, 547 U.S. 518, 538 (2006)("When confronted with a challenge based on trial evidence, courts presume the jury resolved evidentiary disputes reasonably so long as sufficient

18

evidence supports the verdict.").  The Court emphasized that "the standard ... does not permit a court to make its own subjective determination of guilt or innocence." Jackson at 320, n. 13. Moreover, "a reviewing court must consider all of the evidence admitted by the trial court, regardless whether that evidence was admitted erroneously." McDaniel, 130 S.Ct. at 672 (citation and internal quotation marks omitted).

"[U]nder Jackson, the assessment of credibility of witnesses is generally beyond the scope of review." Schlup v. Delo, 513 U.S. 298, 330 (1995).  The question is "whether, viewing the evidence in the light most favorable to the state, it was objectively unreasonable for the Appellate Division to conclude that a rational trier of fact could have found, beyond a reasonable doubt that [petitioner] was guilty [.]" Kamienski v. Hendricks, No. 06–4536, 2009 WL 1477235, at *7 (3d Cir. May 28, 2009), cert. denied, 130 S.Ct. 1168 (Jan. 19, 2010).

In this case, the New Jersey Appellate Division rejected Perez's sufficiency of the evidence claim, having found "ample evidence upon which, giving every reasonable inference to the State, a jury could convict defendant of the possessory charges."  (RE-D at pg. 15).  In particular, the court found that the testimony of the police officers, Gilbert and Glover, (who testified that they saw petitioner leave the jewelry store and through the time they converged on him, as well as having seen petitioner with a handgun), together with Min's positive identification of Perez, was sufficient and ample evidence to support the jury's verdict of guilty beyond a reasonable doubt on the possessory charges.  This is precisely the standard under Jackson v. Virginia.  Thus, the New Jersey court's adjudication of Petitioner's sufficiency of the evidence claim was not contrary to, or an unreasonable application of Jackson and its progeny, and Petitioner is not entitled to habeas relief on Ground Two of his petition.

19

C.  Lack of Jury Charge on Cross-Racial Identification

Perez next asserts that his Fourteenth Amendment right to a fair trial and due process was denied when the trial court refused to give an instruction to the jury on cross-racial identification, as requested pursuant State v. Cromedy, 158 N.J. 112 (1999).[7]  Perez noted that he is Hispanic, the two eyewitnesses, Kyung and Min, are Korean, and the police officers, Gilbert and Glover are African-American.  Perez raised this claim on direct appeal.

The Appellate Division found no merit to petitioner's claim.  Specifically, the court held:

"A cross racial instruction should be given only when ... identification is a critical issue in the case, and an eyewitness's cross-racial identification is not corroborated by other evidence giving it independent reliability."  State v. Cromedy, 158 N.J. 112, 132 (1999). The cross-racial instruction is not required where other independent corroborating evidence exists from which the jury may evaluate the reliability of he [sic] identification, such as other eyewitness accounts.  Id. at 132-33.

Here, there was substantial independent evidence corroborating the witnesses' identification of defendant.  Both Kyung and Min saw defendant in close proximity in the store and the two officers saw defendant leave the store.  Glover chased defendant and never lost sight of him.  All of the witnesses gave similar descriptions of defendant and his clothing.  This evidence permitted the jury to evaluate the reliability of the identification without a cross-racial identification instruction.

(RE-D, pp.15-16).

---

[7]  This Court notes that State v. Cromedy has been abrogated by the New Jersey Supreme Court in State v. Henderson, 208 N.J. 208 (2011).  In Henderson, the New Jersey Supreme Court held that a jury instruction on cross-racial identification should be given whenever cross-racial identification is in issue in trial. 208 N.J. at 299.  However, the Court held that the new rule would only be applied prospectively because "[t]o reopen the vast group of cases decided over several decades, which relied not only on settled law but also on eyewitness memories that have long since faded, would 'wreak havoc on the administration of justice.'" Id., 208 N.J. at 302 (citation omitted).

Generally, a jury instruction that is inconsistent with state law does not merit federal habeas relief.  Where a federal habeas petitioner challenges jury instructions given in a state criminal proceeding,

> [t]he only question for us is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."  It is well established that the instruction "may not be judged in artificial isolation," but must be considered in the context of the instructions as a whole and the trial record.  In addition, in reviewing an ambiguous instruction ..., we inquire "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution.  And we also bear in mind our previous admonition that we "have defined the category of infractions that violate 'fundamental fairness' very narrowly."  "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation."

Estelle v. McGuire, 502 U.S. 62, 72-73 (1991) (citations omitted); see also Smith v. Spisak,130 S.Ct. 676, 684 (2010)(no right to habeas relief if Supreme Court has not previously held jury instruction unconstitutional for same reason); Waddington v. Sauausad, 555 U.S. 179 (2009).

The United States Court of Appeals for the Third Circuit has observed that a habeas petitioner who challenges state jury instructions must "point to a federal requirement that jury instructions ... must include particular provisions," or demonstrate that the jury "instructions deprived him of a defense which federal law provided to him."  Johnson v. Rosemeyer, 117 F.3d 104, 110 (3d Cir. 1997).  This is because district courts do not "sit as super state supreme courts for the purpose of determining whether jury instructions were correct under state law with respect to the elements of an offense and defenses to it."  Id.  As the Third Circuit explained,

> In considering whether this case involves a claim of error under the Constitution, laws, or treaties of the United States, it is critical to remember that the Supreme Court has made it clear that the states define the elements of state offenses.  Accordingly, while there may be constitutionally required minimum criteria which must be met for conduct to constitute a state criminal offense, in general there is no constitutional reason why a state offense must include particular elements.  See McMillan v. Pennsylvania, 477 U.S. 79, 84–86, 106 S.Ct. 2411, 2415–16, 91 L.Ed.2d 67 (1986).

21

Johnson, 117 F.3d at 110.

However, a jury instruction that "reduce[s] the level of proof necessary for the Government to carry its burden [of proof beyond a reasonable doubt] is plainly inconsistent with the constitutionally rooted presumption of innocence." Cool v. United States, 409 U.S. 100, 104 (1972). See also In re Winship, 397 U.S. 358, 364 (1970) ("the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged"); Sandstrom v. Montana, 442 U.S. 510, 523 (1979) (jury instructions that suggest a jury may convict without proving each element of a crime beyond a reasonable doubt violate the constitutional rights of the accused); Smith v. Horn, 120 F.3d 400, 416 (1997), cert. denied, 522 U.S. 1109 (1998)(the Due Process Clause is violated only where "the erroneous instructions have operated to lift the burden of proof on an essential element of an offense as defined by state law.").

Additionally, "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." Henderson v. Kibbe, 431 U.S. 145, 155 (1977). Specifically, in this case, the Appellate Division determined that the trial court's failure to instruct the jury on cross-racial identification was not in error because there was substantial independent evidence corroborating the witness' identification of Perez that enabled the jury to evaluate the reliability of the identification. Further, the failure to give identification instructions on the issue of cross-racial identification did nothing "to lift the burden of proof on an essential element of an offense." Moreover, there was substantial identification evidence other than the testimony of Kyung and Kim, namely, the testimony of the police officers who pursued Perez and apprehended him without losing sight of Perez when he exited the jewelry store, their observance

of petitioner with a handgun during that time, and the fact that all witnesses gave similar descriptions of Perez and his clothing.  Finally, having carefully reviewed the jury charges as a whole, and in particular, the trial judge's lengthy and thorough charge on identification testimony, this Court finds that Petitioner was not deprived of a fair trial by those instructions on identification, and any error as asserted by Perez regarding the exclusion of a cross-racial identification instruction was, at the very most, plainly harmless in light of the overall record.

Thus, this Court finds no error of constitutional dimension.  The absence of the requested jury instruction did not have the capacity to produce an unjust result.  The state court ruling on this issue is neither contrary to nor an unreasonable application of the applicable federal law, nor is the decision based upon an unreasonable determination of the facts.  Accordingly, petitioner is not entitled to relief on this claim.

D.  Identification Procedure Claim

Petitioner's fourth claim asserts that the trial court's failure to exclude in-court identifications because the out-of-court identification was tainted and unduly suggestive violated his due process right to a fair trial.  Perez alleges that the out-of-court identification procedure was unduly suggestive because Detective Glover (1) used only a single photograph of Perez, (2) was the same officer who conducted the investigation, and (3) never advised the witnesses that the photograph may not be the actual suspect, in violation of the Attorney General's Guidelines for Eyewitness Identification Procedures.

The Appellate Division evaluated Perez's claim under the test of admissibility of out-of-court identifications as set forth in State v. Farrow, 61 N.J. 434 (1972), cert. denied, 410 U.S. 937 (1973), State v. Madison, 109 N.J. 223 (1988), which quoted the federal standard outlined in

Simmons v. United States, 390 U.S. 377 (1968).  The court stated that "[i]mpermissive

suggestibility is to be determined by the totality of the circumstances of the identification."

Farrow, 61 N.J. at 451.  A trial court should conduct a two-step analysis, in which the first step

focuses on "whether the procedure in question was in fact impermissibly suggestive."  Madison,

109 N.J. at 232.  "If the court does find the procedure impermissibly suggestive, it must then

decide whether the objectionable procedure resulted in a 'very substantial likelihood of

irreparable misidentification.'"  Id. (quoting Simmons, 390 U.S. at 384).

> The Appellate Division next discussed the second step:
>
> The second step requires the court to "focus on the reliability of the identification.  If the court finds that the identification is reliable despite the impermissibly suggestive nature of the procedure, the identification may be admitted into evidence."  Ibid.  This determination is based upon the totality of the circumstances gleaned from the evidence adduced at the hearing.  Id. at 233.  It is the reliability of the testimony that is the determinative factor for purposes of admissibility of identification evidence.  Id. at 232.  Such things as whether the police indicate that a suspect may be included in the photo array, repetition of a defendant's photo in subsequent arrays, and the time between the incident and the identification are all factors to be considered as part of the totality of the circumstances.  Id. at 233-36.  However, no one factor is dispositive in and of itself.  Id. at 232.
>
> Based upon our review of the record, we are satisfied that the judge properly concluded that although the Guidelines had been violated, the procedure overall was not impermissibly suggestive.  There was a separation between the photo identification and any suggestion that the person in the photo was involved in the incident.  Kyung and Min described the perpetrator and said they could identify him if they again saw him.  Glover then showed them photos, but did not indicate that the person in the photos was under arrest, was a suspect, or was involved in the robbery.
>
> We are satisfied that, assuming the procedure was impermissibly suggestive, the judge properly concluded that under the totality of circumstances, there was no substantial likelihood of irreparable misidentification.  The identifications were accurate.  They were made within three hours of the incident by two eyewitnesses who indicated that they were one [sic] 100% certain hat [sic] defendant was the perpetrator.

(RE-D, pp. 17-18).

An accused is entitled to due process protection against the introduction of evidence of, or tainted by, unreliable identifications elicited through unnecessarily suggestive identification procedures.  See generally Manson v. Brathwaite, 432 U.S. 98 (1977) and cases cited therein.

> [R]eliability is the linchpin in determining the admissibility of identification testimony.... The factors to be considered ... include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation.  Against these factors is to be weighed the corrupting effect of the suggestive identification itself.

Manson, 432 U.S. at 114 (citing Neil v. Biggers, 409 U.S. 188, 199-200 (1972)).  See also United States v. Wise, 515 F.3d 207, 215 (3d Cir. 2008). Significantly, where "identifications were entirely based upon observations at the time of the [incident] and not at all induced by the conduct" of the pretrial identification procedures, the identification does not violate due process.  See Coleman v. Alabama, 399 U.S. 1, 7 (1970).

Thus, due process prohibits an in-court identification if pre-trial identification procedures were "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."  Simmons v. United States, 390 U.S. 377 (1968).

In addition, the Supreme Court has recognized that "improper employment of photographs by police may sometimes cause witnesses to err in identifying criminals." Simmons, 390 U.S. at 383.  The Court has identified certain procedures that heighten the risk of misidentification, including such practices as displaying the photo of only a single individual who generally resembles the person the witness saw, showing the witness photos of several persons among which the photograph of a single individual recurs or is in some way emphasized, or indicating to the witness that police have other evidence that one of the persons pictured committed the crime.  Id.  Despite the risk of misidentification, the Supreme Court has not

25

prohibited the employment of photographic identification methods, either in the exercise of its supervisory power or as a matter of constitutional requirement.  Id.  Instead, the Court has required that each case must be considered on its own facts and must be evaluated in light of the totality of surrounding circumstances; also, the Court has noted that the risk of conviction based on photo misidentification "may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error."  Id.

Similarly, in United States v. Wade, 388 U.S. 218 (1967), the Supreme Court held that a pre-trial line-up is a critical stage of a prosecution at which the suspect is entitled to counsel; where counsel is absent, the accused is entitled to a hearing to determine whether the identification procedure was so tainted that a subsequent in-court identification should be suppressed.

Where a trial court has failed to exclude identification evidence obtained in violation of a defendant's due process or Sixth Amendment rights, the habeas court must determine whether the failure to exclude that evidence was harmless constitutional error under Chapman v. California, 386 U.S. 18 (1967).  See Moore v. Illinois, 434 U.S. 220, 232 (1977).

The Court of Appeals for the Third Circuit has explained that the

Simmons/  inquiry is essentially two-pronged.  The first question is whether the initial identification procedure was "unnecessarily" or "impermissibly" suggestive. This inquiry actually contains two component parts: "that concerning the suggestiveness of the identification, and that concerning *whether there was some good reason for the failure to resort to less suggestive procedures."*  If a procedure is found to have been unnecessarily suggestive, the next question is whether the procedure was so "conducive to ... mistaken identification" or gave rise to such a "substantial likelihood of ... misidentification" that admitting the identification would be a denial of due process.

---

8  Stovall v. Denno, 388 U.S. 293 (1967), overruled on other grounds, Griffith v. Kentucky, 479 U.S. 314 (1987).

United States v. Stevens, 935 F.2d 1380, 1389 (3d Cir. 1991) (citations omitted)(emphasis added by Third Circuit).

Here, though principally relying on state case law,[9] the New Jersey courts correctly identified the controlling legal principles in reviewing Petitioner's claim that the admission of the out-of-court identifications, which were unduly suggestive, violated due process.  The Appellate Division found that the identification procedures used by the police did indeed violate the Attorney General Guidelines for such procedures, but the procedure overall was not impermissibly suggestive.  More importantly, the court evaluated the totality of the circumstances in the identification procedure, such as the separation of time between the photo identification and any suggestion that the person in the photo was involved in the incident, as well as the fact that Gilbert did not indicate to the witnesses that person in the photos was under arrest, was a suspect or was involved in the incident.  Further, the Appellate Division held that, even assuming that the identification procedure was impermissibly suggestive, under the totality of the circumstances, there was no substantial likelihood of irreparable misidentification.  Indeed, the court found the immediacy of the identifications soon after the incident and the certainty of the witnesses in their identification strongly supported the reliability of the identifications.  Having carefully reviewed the transcript of the Wade hearing, the state court record and the Appellate Division decision, this Court concludes that the state court decisions on this issue were neither contrary to nor an unreasonable application of controlling federal law.

---

[9]  The Appellate Division cited to Simmons, supra, and the trial judge relied upon the factors set forth in Neil v. Biggers, supra, in rendering his decision at the Wade hearing.

Nor were the state courts' factual determinations unreasonable in light of the evidence presented. Therefore, Petitioner is not entitled to relief on this ground.

E.  Admission of Prior Convictions

Next, Perez claims that the trial court erred in admitting all three of Perez's prior convictions for impeachment purposes, in violation of his Fourteenth Amendment rights to due process and a fair trial.  This claim was raised on direct appeal.

The trial court allowed the admission of Perez's three prior convictions, in sanitized form, for purposes of impeachment in the event Perez testified at trial.  In reviewing Perez's claim, the Appellate Division noted Perez's criminal history as follows:

> Defendant has juvenile adjudications for entry with intent to steal, breaking and entering, larceny, and trespassing.  He was also charged in 1979 as a juvenile with assault with a dangerous weapon, threatening, robbery, committing a crime while armed, rape, attempted assault and battery on a police officer and larceny.  He was waived up to Superior Court and subsequently convicted in 1980 of attempted assault on a police officer, and larceny.  Defendant was also charged in 1979 as a juvenile with abduction, rape while armed, robbery, and larceny of an auto.  He was waived up to Superior Court and subsequently convicted in 1980 of abduction, sexual assault, sexual assault while armed, robbery, and armed robbery.

> Defendant also has other adult convictions: (1) in 1981 for sexual assault, robbery, and armed robbery; (2) in 1998 for hindering apprehension; and (3) in 1999 for theft by unlawful taking.  If defendant had served his entire sentence for the 1981 conviction, he would have been incarcerated through at least 2000.

(RE-D, pg. 19).

The Appellate Division opined that the key to excluding a defendant's prior convictions is remoteness.  Quoting State v. Sands, 76 N.J. 127 (1978), the court observed:

---

[10]  Defendant was also convicted in 1993 in municipal court for trespassing and larceny of an auto, and in 2004 in municipal court for a public health nuisance.

"Remoteness cannot ordinarily be determined by the passage of time alone.  The nature of the convictions will probably be a significant factor.  Serious crimes, including those involving lack of veracity, dishonesty or fraud, should be considered as having a weightier effect than, for example, a conviction of death by reckless driving.  In other words, a lapse of the same time period might justify exclusion of evidence of one conviction, and not another.  The trial court must balance the lapse of time and the nature of the crime to determine whether the relevance with respect to credibility outweighs the prejudicial effect to the defendant. ...  When a defendant has an extensive prior criminal record, indicating that he has contempt for the bounds of behavior placed on all citizens, his burden should be a heavy one in attempting to exclude all such evidence.  A jury has the right to weigh whether one who repeatedly refuses to comply with society's rules is more likely to ignore the oath requiring veracity on the witness stand than a law abiding citizen.  If a person has been convicted of a series of crimes through the years, then conviction of the earliest crime, although committed many years before, as well as intervening convictions, should be admissible.

[Id. at 144-45 (emphasis added).]

The Appellate Division further held:

To prevent prejudice, courts may "sanitize" prior convictions for crimes similar to the one on which a defendant is being tried, giving the jury only the date and degree of the crime without indicating the crime for which defendant was specifically convicted.  State v. Brunson, 132 N.J. 377, 391 (1993).

Here, defendant had a long criminal history.  Judge Cronin found that the convictions were not too remote, especially given that defendant would have been incarcerated until 2000 if he had fully served the sentences imposed for his prior offenses and had he not been paroled.  Based upon the factors expressed in Sands and Brunson, we discern no reason to disturb the judge's conclusion that defendant's three prior convictions were admissible for the purposes of impeachment should he decide to testify.

(RE-D, pp. 20-22).

The Supreme Court has held that "the Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules."  Marshall v. Lonberger, 459 U.S. 422, 438 n. 6 (1983).  The admissibility of evidence is generally a question of state law which is not cognizable under habeas review.  See Keller v. Larkins, 251 F.3d 408, 416 n. 2 (3d Cir. 2001)("A federal habeas court, however, cannot decide whether the evidence in

question was properly allowed under the state law of evidence"), cert. denied, 534 U.S. 973 (2001).  See also Estelle v. McGuire, 502 U.S. 62, 70 (1991)(holding that the state court's admission in petitioner's trial for murdering his infant daughter of the testimony of two physicians that the child had suffered child abuse did not violate due process because the evidence was relevant to intent).

To be sure, the United States Court of Appeals for the Third Circuit has held that the admission of evidence may violate due process where the evidence "undermine[d] the fundamental fairness of the entire trial."  Keller v. Larkins, 251 F.3d at 413; see also Lesko v. Owens, 881 F.2d 44, 51 (3d Cir. 1989)("the erroneous admission of evidence that is relevant, but excessively inflammatory, might rise to the level of a constitutional violation"); Bisaccia v. Attorney General, 623 F.2d 307, 313 (3d Cir. 1980)(when "the probative value of ... evidence, though relevant, is greatly outweighed by the prejudice to the accused from its admission, then use of such evidence by a state may rise to the posture of fundamental fairness and due process of law"), cert. denied, 449 U.S. 1042 (1980).  However, this Court is not aware of any Supreme Court case clearly establishing that the admission of prior convictions or bad acts evidence constitutes a violation of federal constitutional rights or due process.  See Minett v. Hendricks, 135 Fed. App'x. 547 (3d Cir. 2005)(rejecting claim that admission of "other crimes" evidence is contrary to or an unreasonable application of clearly established Supreme Court precedent). Indeed, Supreme Court precedent suggests the contrary.  See, e.g., Spencer v. Texas, 385 U.S. 554 (1967)(rejecting due process challenge to admission of evidence of prior similar crimes when judge gives limiting instruction).  Because the admission of Perez's three prior convictions for impeachment purposes if he chose to testify was not contrary to, or an unreasonable

30

application of clearly established federal law, as determined by the Supreme Court, Petitioner is not entitled to habeas relief on this ground.

F.  Discovery Violation

In Claim Six of his petition, Perez asserts that the State's discovery violation regarding the State's withholding of fingerprint evidence until mid-trial violated his Fourteenth Amendment right to due process.  Specifically, Perez alleges that trial began on March 8, 2006, and it was not until March 14, 2006, that defense counsel announced having received discovery from the State in the late afternoon of the prior day.  The discovery revealed that a fingerprint had been lifted from the front entrance door of the jewelry store, which did not match Perez. This fingerprint evidence had been in the custody of the State (but not the Prosecutor's Office) from December 23, 2004 through March 13, 2006, when it was turned over to the defense.  A Rule 104 hearing was held and it was confirmed that no fingerprints were retrieved from fuming the handgun, and that one print was found on the entrance door to the jewelry store but it did not match any known prints in the database, including petitioner.

After the Rule 104 hearing, Judge Cronin ruled that there was no actual prejudice, stating:

any actual prejudice can be precluded by the [c]ourt's order that the only potential for prejudice would be the fuming evidence coming in on a direct case, that is a fact that the gun was fumed and there was no readable prints.  It was not something that was disclosed previously.  It is not something that [defense counsel] knew about so she could structure her opening.  It has a potential for prejudice.

And, therefore, on balance, in fairness, I am going to rule that [the prosecutor] cannot get into that on his direct, that he can only elicit from this witness what he intended to elicit when he opened to the jury, which was the chain of custody of the gun.

However, if during the course of cross examination [] of this witness, if there is inquiry made to the fingerprinting of other parts of the crime scene, be it the door [knob] or the casing of the store that, in effect, I very well may rule that the defense has opened the door as to the fuming of the gun.  And in all fairness to the State on redirect examination, that area can be inquired.

31

(RE-D at pp. 22-23).  The Appellate Division found that the trial court had properly ruled that

the State could not present evidence of the fuming of the handgun on its direct case, pursuant to

N.J.Ct.R. 3:13-3(g), which states in relevant part:

> If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this  or with an order issued pursuant to this rule, it may order such party to permit the discovery or inspection of materials not previously disclosed, grant a continuance or delay during trial, or prohibit the party from introducing in evidence the material not disclosed, or it may enter such other order as it deems appropriate. [(emphasis added)].

The Appellate Division further found that:

> any error relating to this evidence lies squarely with defense counsel, who, after receiving a warning about the possibility of opening the door to the fuming evidence, opened that door by asking Robinson on cross-examination about the fuming of the gun.  Since defense counsel opened the door, defendant cannot now claim prejudice.  See State v. Pontery, 19 N.J. 457, 471 (1955)("defendant cannot beseech and request the trial court to take a certain course of action, and upon adoption by the court, take his chance on the outcome of the trial, and if unfavorable, then condemn the very procedure he sought and urged, claiming it to be error and prejudicial.")

(RE-D, pg. 24).

Here, Perez's claim of a state discovery violation does not raise a federal constitutional

issue.  See Marshall v. Hendricks, 103 F. Supp.2d 749, 777 (D.N.J. 2000), aff'd in part and rev'd

in part on other grounds, 307 F.3d 36 (3d Cir. 2002), cert. denied, 538 U.S. 911 (2003).  Perez

contends that the failure to provide the fuming for fingerprint evidence until late in trial violated

his right to due process.  However, it is evident from the record that, under New Jersey state

---

[11]  Referring to N.J.Ct.R. 3:13-2 governing discovery of the State's evidentiary documents in a criminal trial.

[12]  The Court notes that the fuming evidence is not in and of itself exculpatory and thus, the withholding of the information until late in trial does not constitute a violation under Brady v. Maryland, 373 U.S. 83 (1963).

court rules, the trial judge precluded the introduction of the fingerprint evidence based on the discovery violation, as sought by Petitioner's trial counsel.  Indeed, this was an appropriate discovery sanction under N.J.Ct.R.3:13-3(g).  But it was defense counsel who opened the door to this evidence under cross-examination.  Petitioner can not now claim prejudice and denial of due process when it was the conduct of his own defense that brought the evidence into trial after the judge had precluded its introduction by the State on its direct case, as requested by defense counsel.  See State v. Pontery, 19 N.J. 457, 471 (1955), disapproved on other grounds by In re Waiver of Death Penalty, 45 N.J. 501 (1965); United States v. Herrera, 23 F.3d 74, 75 (4th Cir. 1994)("[a] defendant in a criminal case cannot complain of error which he himself has invited," quoting Shields v. United States, 273 U.S. 583, 586 (1927)).

Because this Court finds no federal constitutional violation, this claim for habeas relief is denied.

## G.  Sentencing Claims

Perez finally asserts that his extended term sentence violates the Eighth and Fourteenth Amendments and his Sixth Amendment jury trial rights under Apprendi, Blakely, and Booker. First, Perez argues that he was not eligible for an extended term under the Graves Act, N.J.S.A. 2C:44-3d, because the second requirement under the Act was not satisfied, namely, he was not being sentenced for the commission of any offenses enumerated in N.J.S.A. 2C:43-6c.  Perez raised this claim on direct appeal.

The Appellate Division rejected Petitioner's claim as follows:

N.J.S.A. 2C:44-3 provides, in relevant part:

> If the grounds specified in subsection d. [of this section are found, and the person is being sentenced for commission of any of the offenses enumerated in [N.J.S.A.] 2C:43-6c or [N.J.S.A.] 2C:43-6g, the court shall sentence the defendant to an

extended term as required by [N.J.S.A.] 2C:43-6c or [N.J.S.A.] 2C:43-6g, and application by the prosecutor [for an extended term] shall not be required.

A defendant is mandatory extended term sentence eligible if:

The defendant is at least 18 years of age and has been previously convicted of any of the following crimes: [N.J.S.A.] 2C:11-3, 2C:11-4, 2C:12-1b, 2C:13-1, 2C:14-2a, 2C:14-3a, 2C:15-1, 2C:18-2, 2C:29-5, 2C:39-4a, or has been previously convicted of an offense under Title 2A of the New Jersey Statutes or under any statute of the United States or any other state which is substantially equivalent to the offenses enumerated in this subsection and he used or possessed a firearm, as defined in [N.J.S.A.] 2C:39-1f, in the course of committing or attempting to commit any of these crimes, including the immediate flight therefrom.

[N.J.S.A.] 2C:44-3d.]

Defendant was convicted in 1981 of robbery, N.J.S.A. 2A:141-1, and of being armed with a firearm during that robbery, N.J.S.A. 2A:151-5. Thus, we need only address whether defendant's present conviction for second degree possession of a weapon for an unlawful purpose made him mandatory extended term eligible.

As per N.J.S.A. 2C:44-3, we must look to N.J.S.A. 2C:43-6c for the enumerated offenses. N.J.S.A. 2C:43-6c provides, in relevant part:

A person who has been convicted under [] subsection a, b or c of [N.J.S.A.] 2C:39-5, [] who, while in the course of committing or attempting to commit the crime, including the immediate flight therefrom, used or was in possession of a firearm as defined in [N.J.S.A.] 2C:39-1f, shall be sentenced to a term of imprisonment by the court. The term of imprisonment shall include the imposition of a minimum term. The minimum term shall be fixed at, or between, one-third and one-half of the sentence imposed by the court or three years, whichever is greater, or 18 months in the case of a fourth degree crime, during which the defendant shall be ineligible for parole.

Defendant was convicted of unlawful possession of a handgun in violation of N.J.S.A. 2C:39-5b. Thus, his mandatory extended term sentence is appropriate.

Defendant's remaining contentions that his sentence is illegal, and that he is entitled to re-sentencing under State v. Pierce, 188 N.J. 155 (2006) are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2). However, we add the following comment.

Defendant received a mandatory, not discretionary, extended term sentence. The judge had to impose an extended term sentence because defendant qualified as a second offender with a firearm. N.J.S.A. 2C:44-3d. Because the extended term sentence was

mandatory, the judge had to, and did, impose a sentence within the extended term range of ten to twenty years for a second-degree crime.  The judge had no discretion to consider an ordinary range sentence.

(RE-D, pp. 24-26).

A federal court's ability to review state sentences is limited to challenges based upon "proscribed federal grounds such as being cruel and unusual, racially or ethnically motivated, or enhanced by indigencies."  See Grecco v. O'Lone, 661 F. Supp. 408, 415 (D.N.J. 1987)(citation omitted).  Thus, a challenge to a state court's discretion at sentencing is not reviewable in a federal habeas proceeding unless it violates a separate federal constitutional limitation.  See Pringle v. Court of Common Pleas, 744 F.2d 297, 300 (3d Cir. 1984).  See also 28 U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 67 (1991).

"The Eighth Amendment, which forbids cruel and unusual punishments, contains a 'narrow proportionality principle' that 'applies to noncapital sentences.'"  Ewing v. California, 538 U.S. 11, 20 (2003)(citations omitted).  The Supreme Court has identified three factors that may be relevant to a determination of whether a sentence is so disproportionate to the crime committed that it violates the Eighth Amendment: "(1) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions."  Solem v. Helm, 463 U.S. 277, 292 (1983).  Additionally, Justice Kennedy has explained that Solem does not mandate comparative analysis within and between jurisdictions, see Harmelin v. Michigan, 501 U.S. 957, 1004–05 (Kennedy, J., concurring in part and concurring in judgment), and he has identified four principles of proportionality review—"the primacy of the legislature, the variety of legitimate penological schemes, the nature of our federal system, and the

35

requirement that proportionality review be guided by objective factors"—that "inform the final one: The Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime," id. at 1001 (citation omitted) quoted with approval in Ewing, 538 U.S. at 23.

Consequently, this Court finds that Perez's challenge to the state court's extended term sentencing is not reviewable in this Court; he has presented no cogent argument why his sentence is unconstitutional in this regard.  This Court finds that Perez's sentence is not grossly disproportionate to the crime he committed.  Indeed, extended sentences are common in the State of New Jersey and other states, and they are not contrary to legitimate penological schemes. Therefore, even if the Court were to read an Eighth Amendment argument into Perez's claim under Ground Seven, it would not state a violation of federal constitutional limitations.

Moreover, Perez's argument against application of the mandatory extended term sentencing under the Graves Act is plainly wrong and misreads the relevant New Jersey statutes, as determined by the sentencing court and the Appellate Division on direct appeal.  This Court concludes that the decisions of the sentencing court and of the Appellate Division were neither contrary to, nor an unreasonable application of, clearly established federal law, nor were they based on an unreasonable determination of the facts in light of the evidence presented. Therefore, Perez is not entitled to relief on this ground.

As to Perez's second argument on his sentencing claim regarding an alleged violation of his Sixth Amendment jury trial rights under Apprendi and Blakely, this Court finds no merit. Perez also raised this claim on direct appeal and the Appellate Division found Petitioner's "remaining contentions that his sentence is illegal, and that he is entitled to re-sentencing under

State v. Pierce, 188 N.J. 155 (2006) are without sufficient merit to warrant discussion in a written opinion."  (RE-D, pg. 26).  The Appellate Division did add, however, that the extended term sentence was mandatory, not discretionary, because Perez qualified as a second offender with a firearm under N.J.S.A. 2C:44-3d.  (Id.).

In Apprendi v. New Jersey, 530 U.S. 466, 471, 490 (2000), pursuant to the Sixth Amendment right to trial by jury, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  In Blakely v. Washington, 542 U.S. 296 (2004), the Supreme Court overturned a sentence imposed under Washington state's sentencing system, explaining that "the relevant statutory maximum is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings."  542 U.S. at 302 (internal quotations omitted).

Here, Perez argues that the Supreme Court's decisions in Apprendi and Blakely invalidate his extended sentence.  That argument is unavailing.  To establish that petitioner was subject to an extended sentence under the meaning of N.J.S.A. 2C:44-3d, the Court took notice of Perez's prior convictions.  A court may take notice of prior convictions at sentencing.  See Apprendi, 530 U.S. at 490.  The sentencing court also took notice of the facts of Petitioner's conviction on Count 3, possession of a handgun for an unlawful purpose, as found by the jury.

---

[13]  In State v. Pierce, the New Jersey Supreme Court held that a sentencing court's fact-findings about defendant's prior convictions under the persistent offender statute did not violate defendant's right to a jury trial, and that for a defendant subject to the persistent offender statute, the maximum sentence is the top of the extended-term range, for purposes of Apprendi.  188 N.J. at 163-67.  In the present case, Perez was not sentenced pursuant to the discretionary persistent offender statute, but rather, his extended term sentence was mandated under the Graves Act.

Further, as noted by the Appellate Division on direct appeal, the sentencing court was required to impose a sentence within the extended range, it was not discretionary.  See Blakely, 542 U.S. at 304 (the allowable sentence is up to "the maximum [the sentencing judge] may impose without any additional findings [of fact]") (emphasis in original).  Thus, it is plain from the record and sentencing transcript that no additional findings of fact were made by the sentencing court in imposing a mandatory extended term under the Graves Act.  And although the sentencing court considered other aggravating and mitigating factors during sentencing, that alone does not render the sentence invalid.  A fact considered at sentencing must be submitted to a jury if it "increases the penalty for a crime beyond the prescribed statutory maximum."  Blakely, 542 U.S. at 310 (quoting Apprendi, 530 U.S. at 490).  The record reflects that the court considered aggravating and mitigating factors to select the appropriate sentence within that mandated extended range.  Finally, the maximum extended range was 20 years and Perez was sentenced to 18 years in prison.  Accordingly, Petitioner's sentence did not violate Apprendi or Blakely.

Therefore, there is no indication that the state courts unreasonably applied established federal law in reaching its decision, or that the state court decision was based on an unreasonable application of the facts in light of the evidence presented at trial.  Perez has not demonstrated that the state court opinion, when evaluated objectively and on the merits, resulted in an outcome that cannot be reasonably justified.  Matteo, 171 F.3d at 891.  As Perez was properly sentenced in accordance with state law, and where he has not provided this Court with any justification to grant habeas relief with respect to his extended term sentence, this claim for habeas relief is denied.

## V.  <u>CERTIFICATE OF APPEALABILITY</u>

This Court next must determine whether a certificate of appealability should issue.  <u>See</u> Third Circuit Local Appellate Rule 22.2.  The Court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  For the reasons discussed above, this Court's review of the claims advanced by petitioner demonstrates that he has failed to make a substantial showing of the denial of a constitutional right necessary for a certificate of appealability to issue.  Thus, this Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

## **<u>CONCLUSION</u>**

For the above reasons, this Court finds that the § 2254 habeas petition must be denied,

and a certificate of appealability will not issue.  An appropriate Order follows.

<u>s/Susan D. Wigenton, U.S.D.J.</u>

Orig:   Clerk
Cc:      Parties